UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
RAHEIM WYATT, *pro se*,  :
                                    Petitioner,  :
                                                       **MEMORANDUM AND ORDER**
                                -against-              :                      10-CV-5264 (DLI)
UNITED STATES OF AMERICA,  :
                                    Respondent.  :
---------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

On May 24, 2007, Raheim Wyatt ("Petitioner") was convicted, upon his plea of guilty, of possession of a firearm by a felon. On August 7, 2008, this Court sentenced him to 120 months of incarceration, followed by three years of supervised release with special conditions, and ordered him to pay a $100 special assessment. (Transcript of Sentencing Hearing ("Sentencing Tr."), Docket Entry No. 6, Ex. 3, at 28.) On August 5, 2009, the United States Court of Appeals for the Second Circuit ("Second Circuit") affirmed the judgment of this Court. *See United States v. Wyatt*, 331 Fed. Appx. 92 (2d Cir. 2009). Petitioner did not file a writ of certiorari to the Supreme Court of the United States.

On October 12, 2010, Petitioner, proceeding *pro se*,[1] filed the instant motion ("Motion") challenging his sentence pursuant to 28 U.S.C. § 2255. (*See generally* Motion ("Mot."), Docket Entry No. 1.) Petitioner contends that his trial counsel was constitutionally ineffective for failing to file a motion to suppress Petitioner's post-arrest statement and advise him regarding the elements of the charged offense, and that his guilty plea was not knowing and voluntary. (*Id.* at

---

[1] In reviewing the motion, the Court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, the Court interprets the motion "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons,* 470 F. 3d 471, 474 (2d Cir. 2006) (emphasis omitted).

1

4-5, 7.) Petitioner requests that the Court vacate his conviction and sentence, or, alternatively, hold an evidentiary hearing regarding his claims. (*Id* at 13.) The government opposes and argues that the record contradicts Petitioner's assertions and, therefore, the Court should deny the Motion. (*See* Memorandum in Opposition to Section 2255 Petition, Docket Entry No. 6, at 1.) For the reasons stated below, Petitioner's Motion is denied in its entirety.

## BACKGROUND

**I.  Factual Background**

On March 31, 2006, New York State Parole ("NYSP") officers conducted an inspection of Petitioner's residence in Brooklyn, New York. (Presentence Investigation Report ("PSR"), Docket No. 06-cr-782,[2] Docket Entry No. 55, ¶ 2).[3] At that time, Petitioner was under the supervision of NYSP following his release from custody the preceding May. (*Id.*) As a condition of his release, Petitioner was subject to random searches of his residence. (*Id.*) During the March 31, 2006 search, NYSP officers were accompanied by New York City Police Department ("NYPD") officers. (*Id.* ¶ 3.) During a search of Petitioner's sister's bedroom, to which she consented, NYSP officers recovered a nylon bag containing 14 boxes of ammunition, 49 loose rounds of ammunition, and an ammunition clip for a handgun. (*Id.* ¶ 4.). Petitioner's sister advised the NYSP officers that the ammunition did not belong to her. (*Id.* ¶ 4.)

Petitioner's sister also advised one of the NYSP officers that Petitioner's son sometimes resided in the bedroom adjacent to her room, and she consented to a search of that room too. (*Id.* ¶ 5.) The NYSP officers recovered a loaded .45 caliber handgun and a bulletproof vest in this second room. (*Id.* ¶ 5.) NYSP parole officers also located a locked safe in the kitchen of

---

[2] All references to "Docket No. 06-cr-782" are to the criminal case docket underlying the instant Motion.
[3] Although the government cites to the PSR, this document is not on the public docket. In order to ensure a complete record, the Court has docketed the PSR and accompanying documents under seal.

Petitioner's residence, which, according to Petitioner's sister, belonged to Petitioner. (*Id.* ¶ 7.) Ultimately, NYPD emergency services officers forced the safe open, revealing a loaded .357 caliber handgun. (*Id.* ¶ 7.)

After being placed under arrest, Petitioner gave a written statement where he stated, in substance, that a friend gave him the .357 caliber firearm in September 2005, and that he kept the firearm for his protection. (*Id.* ¶ 7.) Petitioner also stated that the .45 caliber handgun belonged to a friend of his who sometimes stayed at his residence and the friend left the firearm there approximately two weeks earlier. (*Id.* ¶ 8.)

After Petitioner's arrest by the NYPD officers, an agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives reviewed Petitioner's criminal history and determined that he previously had been convicted felony. (*Id.* ¶¶ 9, 28-37.) On November 21, 2006, Petitioner was indicted for possessing firearms after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (*See* Indictment, Docket No. 06-cr-782, Docket Entry No. 7.)

## II. Plea Hearing

Mr. Raymond Colon, Esq. represented Petitioner from his arraignment through sentencing and on his direct appeal to the Second Circuit. On May 24, 2007, pursuant to a written plea agreement, Petitioner pled guilty to the sole charge in the indictment. (*See* Plea Agreement, Docket Entry No. 6, Ex. 1; Transcript of Plea Hearing ("Plea Tr."), Docket Entry No. 6, Ex. 2.) The plea agreement indicated, *inter alia*, that Petitioner would be subject to an estimated United States Sentencing Guidelines ("Guidelines") sentence range of 37 to 46 months of imprisonment, based upon an adjusted offense level of 14, which assumed that Petitioner fell within Criminal History Category VI. (*See* Plea Agreement ¶ 2.) The plea agreement also

provided that the estimated Guidelines range contained in the agreement was not binding on the Court, the Probation Department ("Probation"), or the government, and Petitioner would not be entitled to withdraw his guilty plea if the Court's determination of the Guidelines range was different than that provided by the written plea agreement. (*Id.* ¶ 3.)

During the guilty plea allocution, Petitioner, who had been placed under oath, confirmed that he had read and reviewed the plea agreement with his attorney and that he understood all of its terms. (Plea Tr. at 14-22.) The Court also reviewed with Petitioner some of the salient terms of the plea agreement. (*Id.*) Specifically, the Court reviewed the statutory sentencing range, and instructed Petitioner that the Guidelines were advisory. (*Id.* at 15-20.) When the Court advised Petitioner that the Court, Probation and the government were not bound by the Guidelines range estimate contained in the written plea agreement, and that he would not be permitted to withdraw his plea if the estimate was incorrect, Petitioner affirmed that he understood. (*Id.* at 22.) Additionally, Petitioner confirmed that he had an opportunity to discuss his case with his attorney, including the charge in the indictment, and was satisfied with his attorney's representation. (*Id.* at 7-8.) Petitioner further affirmed that no one had forced him to plead guilty or promised him anything aside from what was in the written plea agreement in return for his guilty plea, and that he was pleading guilty voluntarily and of his own free will. (*Id.* at 23-24.) The Court found that Petitioner fully understood his rights and the consequences of his plea, was pleading guilty voluntarily, and that there was a factual basis for the plea. (*Id.* at 23-26.) Accordingly, the Court accepted Petitioner's plea of guilty to the sole count of the indictment. (*Id*. at 26.)

**III.    Sentencing**

On February 11, 2008, the Court gave notice pursuant to Federal Rule of Criminal Procedure 32(h) that it was contemplating upwardly departing from the applicable sentencing guideline range and imposing a non-guideline sentence by imposing the statutory maximum sentence of ten years of imprisonment.  (*See* Order dated February 11, 2008.)  The Court granted defense counsel's request for an adjournment to submit an additional sentencing memorandum in light of this notice.  (*See* Minute Entry dated February 26, 2008.)  Both parties submitted a sentencing memorandum on the Court's contemplated upward departure.  (*See* July 30, 2008 Letter from Def., Docket Entry No. 39; July 31, 2008 Letter from USA, Docket Entry No. 40.)  The parties appeared for sentencing on August 7, 2008.  Before imposing sentence, the Court noted the agreement between the parties, Probation, and the Court that the applicable Guidelines sentencing range was 63-78 months, based on a total offense level of 19 and a Criminal History Category of VI.  (Sentencing Tr. at 22.)

At the sentencing hearing, the Court noted its obligation to consider the factors set forth in 18 U.S.C. § 3553(a) ("3553(a) Factors"), and specifically enumerated those factors.  (*Id.* at 22-23.)  The Court discussed Petitioner's "very long and extensive criminal history," which began with a gunpoint carjacking for which Petitioner was sentenced to four years' imprisonment.  (*Id.* at 23-24.)  After describing Petitioner's criminal history, the Court recited the facts underlying the instant case, and noted that Petitioner was on parole at the time of his last arrest.  (*Id.* at 23-26.)  Lastly, the Court discussed the psychological evaluation of Petitioner contained in the PSR, which indicated that Petitioner minimizes or denies responsibility for his involvement in crimes and was likely to re-offend.  (*Id.* at 26-27.)  Based on its consideration of the advisory Guidelines, the 3553(a) factors, and all of the facts and circumstances of the case, the Court

imposed a term of imprisonment of 120 months, three years of supervised release with special conditions, and ordered Petitioner to pay a $100 special assessment. (*Id.* at 28-31.) The Court indicated that the sentence would run concurrent to Petitioner's state sentence, but the Court would not recommend he be given credit for time Petitioner served on that state sentence. (*Id.* at 28.)

Petitioner filed a timely notice of appeal, but did not seek to vacate his guilty plea or otherwise challenge his conviction. Instead, he challenged the sentence imposed by the Court, and argued that: (1) the sentence was procedurally unreasonable because the Court based its sentence on facts already considered in the recommended Guidelines range of 63-78 months; (2) the Court failed to explain in specific detail its reasons for imposing an above-Guidelines sentence in the written order of judgment and commitment; and (3) the sentence was substantively unreasonable. On August 5, 2009, the Second Circuit rejected Petitioner's claim by summary order and affirmed the sentencing court's judgment by noting that: (1) there was no procedural error in the Court's consideration of Petitioner's criminal history and characteristics in imposing an above-Guidelines sentence; (2) Petitioner's argument that the Court failed to explain its reasons for imposing an above-Guidelines sentence was contradicted by the record; and (3) with regard to Petitioner's claim that his sentence was substantively unreasonable, the court concluded that the sentence was not outside the broad range of permissible decisions. *Id.*

## DISCUSSION

### I. Ineffective Assistance of Counsel

The Court must evaluate Petitioner's claim of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner "must show that counsel's representation fell below an objective standard of reasonableness . . .

under prevailing professional norms." *Id.* at 687-88. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Second, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a guilty plea, the second prong of the *Strickland* test is satisfied upon a showing by the defendant "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, Petitioner claims that he received ineffective assistance of counsel because defense counsel failed to: (1) seek the suppression of Petitioner's post-arrest statement, despite Petitioner's insistence that his statement was involuntary; and (2) advise Petitioner that, in order to be convicted as a felon in possession of a firearm, the government had to prove Petitioner possessed the firearm. Petitioner also alleges that his plea was not knowing and voluntary, because defense counsel coached him to lie during his plea allocution and accept guilt, when he, in fact was innocent of the crime. Petitioner contends that he would not have pled guilty but for defense counsel's errors.

## II. Analysis

As an initial matter, the Court must determine whether Petitioner's guilty plea prohibits the Court from reaching the merits of his ineffective assistance claim. Generally, a petitioner filing a motion pursuant to Section 2255 cannot challenge his counsel's performance on matters occurring prior to his guilty plea, because "a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea." *Whitehead v. Senkowski*, 943 F.2d 230, 233 (2d Cir. 1991). As the Supreme Court

7

explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

Accordingly, as long as a guilty plea was made knowingly and voluntarily, any claims of ineffective assistance of counsel relating to events prior to the guilty plea cannot be asserted. *United States v. Torres*, 129 F.3d 710, 715-16 (2d Cir. 1997) (ineffective assistance claim waived by knowing and voluntary guilty plea); *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996) (defendant's "guilty plea effectively waived all ineffective assistance claims relating to events prior to the guilty plea"); *Mickens v. Brown*, 2009 WL 3756646, at *3 (E.D.N.Y. Nov. 4, 2009) ("[E]ven if [petitioner's] counsel behaved ineffectively, [petitioner] waived this claim by voluntarily, knowingly, and intelligently pleading guilty."); *Vasquez v. Parrott*, 397 F. Supp. 2d 452, 463 (S.D.N.Y. 2005) ("The petitioner's unconditional guilty plea waived all claims of ineffective assistance of counsel relating to events prior to the guilty plea that did not affect the voluntariness of his plea."). Here, if Petitioner pled guilty knowingly and voluntarily, he does not have a viable claim based on the alleged ineffectiveness of his attorney prior to his plea.

    a. **Failure to Seek Suppression of Post-Arrest Statement**

        i. **Petitioner's Claims of Coercion and Actual Innocence are Not Cognizable**

In his first claim, Petitioner argues that he is entitled to relief based on his counsel's failure to file a motion to suppress his post-arrest statement. Petitioner asserts that he "was coerced into making the statement, and only gave it because they threatened to charge his sister with the crime. He claims actual innocence." (Mot. at 14.) Petitioner's claims that his prior

confession was involuntary or that he is actually innocent are not cognizable on habeas review, and, therefore, fail as a matter of law.

As discussed above, it is well settled that "[a] defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea." *Coffin*, 76 F.3d at 497. "[A] guilty plea does not 'waive' constitutional challenges so much as it conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue[.]" *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006) (per curiam). As the Supreme Court explained:

> [A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.

*Menna v. New York*, 423 U.S. 61, 62 n.2 (1975) (per curiam).

Accordingly, Petitioner's guilty plea waived his claims that his statement during his interrogation was coerced and that he actually is innocent, because they are associated with events that occurred prior to its entry and he does not connect these claims to the voluntariness of his plea. Petitioner cannot now claim actual innocence or assert any right against coerced statements as bases to withdraw his guilty plea.

### ii. Impact of Lack of Suppression Motion on Petitioner's Guilty Plea

To raise a claim despite a guilty plea, Petitioner must show that his plea was not knowing and voluntary, because the advice he received from his counsel, Mr. Colon, was not within acceptable standards. *See Parisi v. United States*, 529 F.3d 134, 138-139 (2d Cir. 2008).

Petitioner asserts in his Motion that "[b]ut for Attorney Colon's ineffectiveness by not informing [him] of his legal right to move for suppression, he would not have pled[] guilty without first moving the court to suppress the statement." (Mot. at 16.) Although it is questionable how Petitioner connects the purported ineffectiveness occurring prior to his guilty plea to the knowing and voluntary nature of his decision to enter a plea of guilty, the Court will construe Petitioner's arguments broadly to determine if he has raised a colorable claim. Given these allegations, and construing his claims broadly, the Court finds that Petitioner has sufficiently connected his claim of ineffectiveness occurring prior to his plea to his ultimate decision to plead guilty and will now consider the adequacy of Petitioner's plea.

### iii. Petitioner's Guilty Plea was Knowing and Voluntary

As set forth below, the record indicates that Petitioner's guilty plea was knowing and voluntary. Petitioner's claim that his plea was not entered into knowingly and voluntarily, because counsel failed to properly advise him of his right to move for suppression is meritless, as Petitioner stated otherwise during under oath his plea allocution. *See United States v. Gonzalez*, 647 F.3d 41, 56-57 (2d Cir. 2011) (noting that, in the context of determining the voluntariness of a plea, "[a] defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw [the] guilty plea" (citations and internal quotation marks omitted)). "[I]n the absence of any credible evidence to the contrary, the court is permitted to rely upon the defendant's sworn statements, made in open court, that: his plea was knowing and voluntary." *Pringle v. United States*, 2011 WL 3792820, at *3 (S.D.N.Y. Aug. 25, 2011). This is especially true when the defendant "discussed the plea with his attorney, he knew that he could not withdraw the plea, he knew that no promises had been made except those contained in the plea agreement, and he was satisfied with the advice of counsel." *See id.* (internal citation

omitted). Because Petitioner has not provided any evidence to the contrary, the Court will instead rely on Petitioner's own sworn statements before this Court.

During the plea colloquy, the Court specifically asked Petitioner whether he: (1) "had an opportunity to discuss this case with [his] attorney"; was "fully satisfied with the representation and advice given to [him] in this case by Mr. Colon"; (3) "specifically discussed the charge contained in the indictment with Mr. Colon;" and (4) was "pleading guilty voluntarily and of [his] own free will." (Plea. Tr. at 7-8, 23.) Petitioner answered "Yes" to each of these questions. (*Id.*) The Court also asked Petitioner whether "anyone threatened or forced [him] to plead guilty," and he answered "No." (*Id.* at 23.)

The Court also instructed Petitioner that "the government has the burden of proving the guilt of the defendant," and "[i]f the prosecutor cannot or does not meet his burden of proof, the jury has the duty to find the defendant not guilty even if the defendant is guilty." (*Id.* at 9.) Petitioner indicated that he understood these legal principles. (*Id.* at 10.) The Court reminded Petitioner that, even if he were guilty of the charged crime, it was up to him to decide his course of action and not up to his family, lawyers, the government, or anyone else, and Petitioner said he understood. (*Id.* at 9-10.) Petitioner also indicated that he understood that he was giving up "the right to object to evidence offered by the government" and the "right to offer evidence on [his] own behalf and to raise any defense that [he] may have." (*Id.* at 11.)

In the context of such a plea allocution, a defendant's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *accord*, *e.g.*, *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999). Such statements "are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Adames*, 171 F.3d at 732. In this case, the record reveals that Petitioner was informed and knew

what he was doing when he pled guilty. He has not provided credible evidence that would justify overlooking his statements under oath that he was choosing to plead guilty of his own accord. Moreover, "Petitioner's claim of ineffective assistance of counsel appears to be based on nothing more than his after-the-fact dissatisfaction with . . . the resultant term of incarceration, which does not constitute a valid basis on which to find that his counsel was ineffective." *Ariola v. LaClair*, 2008 WL 2157131, at *16 (N.D.N.Y. Feb. 20, 2008) *report and recommendation adopted*, 2008 WL 2157130 (N.D.N.Y. May 20, 2008); *accord Albanese v. United States*, 415 F. Supp. 2d 244, 254 (S.D.N.Y. 2005) (citing *United States v. Garguilo*, 324 F.2d 795, 797 (2d Cir. 1963) ("A convicted defendant is a dissatisfied client, and the very fact of his conviction will seem to him proof positive of his counsel's incompetence.")).

Because Petitioner's guilty plea was both knowing and voluntary, his claim that counsel was ineffective for failing to file a suppression motion is dismissed.

**b. Failure To Advise Petitioner Regarding the Charged Crime**

In his second claim, Petitioner alleges that his defense counsel failed to explain the nature and elements of the sole charge in the indictment to him. (Mot. at 17.) More specifically, Petitioner asserts that Mr. Colon did not advise him "that in order to obtain a conviction for felon-in-possession under 18 U.S.C. § 922(g)(1) the government must prove [the elements of the crime] beyond a reasonable doubt." (*Id*. at 17.) Petitioner argues that defense counsel's "failure to advise his client, [Petitioner], about the pertinent legal principles involved in defending against this particular charge so that he could make intelligent and informed decision . . . resulted in [Petitioner] pleading guilty to a charge he was not guilty of." (*Id*. at 20.) Petitioner further contends that his counsel's performance was "constitutionally deficient" and that Petitioner, "who was innocent of the charge, and pled guilty only because of his attorney's incompetent and

12

erroneous advice." (*Id.* at 20-21.)

As explained above, "at least on collateral attack of a judgment of conviction, under *Tollett* a petitioner may not assert pre-plea constitutional violations bearing on the valid establishment of his factual guilt." *Gregg*, 463 F.3d at 164. Because a "plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence[,]" review of the conviction is "ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989); *see also Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."). In short, Supreme Court precedent forecloses this Court's consideration of any claims other than those relating to the voluntary nature of Petitioner's plea and whether he received the effective assistance of counsel in regard to his decision to plead guilty. Again, Petitioner's assertions regarding his actual innocence are not cognizable.

The Court is mindful that "a plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). Though Petitioner does not clear make that this is his assertion, the Court, in construing Petitioner's arguments broadly, will consider such an argument.

The Second Circuit has held that "[a] district court is not required to follow any particular formula in determining that defendant understands the nature of the charge to which he is pleading guilty." *United States v. Andrades*, 169 F.3d 131, 135 (2d Cir. 1999). It is enough for a

13

court to "'describe the elements of the offense in the court's own words' or [to] 'provide that information by reading the indictment to the defendant where the pertinent count spells out the elements of the offense and the circumstances indicate that this will be sufficient.'" *Id.* (citations omitted).

At the plea hearing, the Court stated the elements of the felon-in-possession charge to Petitioner, and he noted that he understood the charge. (Plea Tr. at 8-9.) Consequently, Petitioner was made sufficiently aware of the elements of the charge. Petitioner also described in his own words what he did in connection with the acts charged in the indictment and admitted his unlawful possession of the firearms referenced in the indictment. (*Id.* at 25-26.) Although Petitioner may not have been aware of the precise elements of the crime, he was aware that he was pleading guilty to the specific crime of being a felon in possession of a firearm, and that he was admitting to facts that the Court deemed important in determining whether he was, in fact, guilty of that crime.

With regard to Petitioner's understanding of the government's burden to prove the elements of the crime beyond a reasonable doubt, the Court made the nature of this burden clear to Petitioner. During the plea allocution, the Court repeatedly instructed Petitioner that he had the option of allowing his plea of not guilty to stand and going to trial, where he would be presumed innocent. (Plea Tr. at 9-10.) The Court informed Petitioner that it would be the government's burden to overcome that presumption at trial by proving his guilt by competent evidence and beyond a reasonable doubt. (Plea. Tr. 10-11.) Petitioner stated that he understood these instructions. (*Id.* at 9-11.) The Court also advised Petitioner repeatedly that, by pleading guilty, he gave up his right to have the government prove his guilt beyond a reasonable doubt and Petitioner stated that he understood. (*Id.* at 11.)

14

Petitioner's allegations are further contradicted by his counsel, Mr. Colon, who submitted an affidavit and vehemently disagrees with Petitioner's claims. (*See generally* Affidavit of Raymond L. Colon ("Colon Aff."), Docket Entry No. 14.) Mr. Colon asserts that he "continuously made it clear to petitioner that the government always bears the burden of proving beyond a reasonable doubt that the defendant possessed the firearms(s) in order to convict him (a legal concept that [Petitioner] assured [counsel] that he understood, given his numerous prior convictions)." (*Id.* ¶ 5.) The Court finds Mr. Colon's statement regarding his advice to Petitioner to be more credible than Petitioner's contradictory and self-serving statements. Therefore, an evidentiary hearing is unnecessary. *See Chang v. United States*, 250 F.3d 79, 85-86 (2d Cir. 2001) (finding that a hearing was not required where the court found defense counsel's detailed affidavit more credible than petitioner's contradictory "self-serving and improbable assertions"); *Aessa v. Annets*, 2009 WL 1636251, at *8 (E.D.N.Y. June 10, 2009) ("Absent credible evidence to the contrary, this court credits [defense counsel's] affirmation" regarding advice whether to plead guilty.).

Thus, it is clear from the record that Petitioner understood the nature of the charges against him sufficiently to comport with due process. *See Panuccio v. Kelly*, 927 F.2d 106, 110 (2d Cir. 1991) ("The trial court could . . . appropriately assume that [petitioner] understood the charges against him since he was represented by counsel who had presumably explained the charges to him . . . [and] [t]here was, in short, nothing about the allocution that undermined the reliability of the plea as an indicator of factual guilt.:); *cf. United States v. Bonilla*, 17 F. App'x 11, 13 (2d Cir. 2000) ("This Circuit has consistently affirmed denials of motions to withdraw guilty pleas when the defendant's allegations are 'directly contradicted by his clear statements at allocution' that contained sufficient factual detail about the offense.").

Accordingly, Petitioner's claim that counsel was ineffective for failing to explain the nature and elements of the sole charge in the indictment is dismissed.

### c. Alleged Coaching by Petitioner's Counsel

In his third claim, Petitioner again alleges that the Court "wrongly concluded that his plea was knowing and voluntary and supported by a sufficient factual basis." (Mot. at 7.) He contends that Mr. Colon "coached and instructed" him regarding what answers to give the Court during his plea allocution, and that Mr. Colon effectively encouraged him to lie to the Court. (*Id.* at 24.) Moreover, Petitioner argues he was unable to make "an intelligent choice among viable alternatives courses of action open to him," due to Mr. Colon providing deficient advice and pressuring him to plead guilty. (*See id.* at 25.) Petitioner also reiterates his claim of actual innocence.

Again, for the reasons explained above, Petitioner's claim of actual innocence is not cognizable, and neither is his claim that his plea was not supported by a sufficient factual basis. In addition, Petitioner's unsupported allegation that he was unduly pressured by Mr. Colon to plead guilty is inconsistent with Petitioner's own statements during the plea allocution, and, therefore, is meritless. During the plea allocution, the Court inquired in to whether Petitioner had been threatened or forced into pleading guilty, and Petitioner confirmed that he had not been threatened or forced to do so, and instead was "pleading voluntarily and of [his] own free will." (*Id.* at 23.) "A trial court may fairly rely upon a [petitioner's] sworn statements made in open court." *Salerno v. Berbary,* 389 F. Supp. 2d 480, 484-85 (W.D.N.Y.2005) (rejecting petitioner's challenge to validity of guilty plea where his allegations in the habeas proceeding were contradicted by his sworn statements at the plea allocution); *see also United States v. Hernandez,* 242 F.3d 110, 114 (2d Cir. 2001) (rejecting an ineffective assistance claim "on the merits

because [the defendant's] factual assertions regarding his counsel's alleged ineffectiveness simply contradict his sworn statements at the plea allocution"); *Savinon v. Sears*, 2011 WL 6979974, at *4 (S.D.N.Y. Dec. 08, 2011), *adopted*, 2012 WL 77848 (S.D.N.Y. Jan. 10, 2012) (rejecting petitioner's allegation in habeas proceeding that he was pressured to plead guilty where "[p]etitioner's allegation that he was unduly pressured to plead guilty was inconsistent with his own statements during the plea allocution"). Additionally, Mr. Colon asserts in his own declaration he never instructed Petitioner to lie during his allocution. (Colon Aff. ¶ 6.) Given Petitioner's statements during the plea proceedings and the consistent declaration of his counsel, Petitioner cannot succeed on his claim that his attorney improperly pressured him to accept the plea offer.

Accordingly, Petitioner's claim that his guilty plea was not knowing or voluntary, because his counsel coerced him into pleading guilty or instructed him to lie during his plea allocution is dismissed.

### III. No Evidentiary Hearing is Needed

Finally, Petitioner argues that he is entitled to an evidentiary hearing on the issues set forth in his Motion. In light of the submissions of the parties, including the affidavit of Mr. Colon, and the clear record, the Court was able to resolve all factual issues without the need for a more expanded hearing. *See Chang*, 250 F.3d 79, 86 (2d Cir. 2001). Petitioner's request is denied.

A court may deny a Section 2255 motion "without a testimonial hearing where (1) the allegations of the motion, accepted as true, would not entitle the petitioner to relief or (2) the documentary record, including any supplementary submissions such as affidavits, render a testimonial hearing unnecessary." *Rosa v. United States*, 170 F. Supp. 2d 388, 398 (S.D.N.Y.

2001) (citing *Chang*, 250 F.3d at 85-86). Moreover, where, as in this case, the petitioner's Section 2255 motion is before the same court as the original criminal proceeding, the court "may rely on its own familiarity with the case and deny the motion without a hearing," if the motion lacks "meritorious allegations that can be established by competent evidence." *Stokes v. United States*, 2001 WL 29997, at *2 (S.D.N.Y. Jan. 9, 2001) (quoting *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990)); *see also Mittal v. United States*, 2005 WL 2036023, at *4 (S.D.N.Y. Aug. 24, 2005). Furthermore, courts in this Circuit repeatedly have reviewed these types of ineffective assistance claims without an evidentiary hearing, relying instead on the petitioner's submissions and an affidavit from the trial attorney. *See United States v. Williams*, 2009 WL 1162382, at *3 (S.D.N.Y. 2009); *Riggi v. United States*, 2007 WL 2245595, at *9 (S.D.N.Y. 2009) (collecting cases). Accordingly, Petitioner's request for a hearing is denied.

## CONCLUSION

For the reasons set forth above, Petitioner's Motion pursuant to 28 U.S.C. § 2255 is denied in its entirety. Petitioner is further denied a certificate of appealability, as he fails to make a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *see also Lucidore v. New York State Division of Parole*, 209 F.3d 107, 112 (2d Cir. 2000) (holding that substantial showing exists where (i) the issues involved in the case are debatable among jurists of reason, or (ii) a court could resolve the issues in a different manner, or (iii) the questions are adequate to deserve encouragement to proceed further). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       March 31, 2015

                                                   _____/s/_____
                                                           DORA L. IRIZARRY
                                                    United States District Judge